**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **AIMAN ABDULBAKI,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **REGENT CARE CENTER OF SAN** | § | **SA-11-CV-00211 OLG (NN)** |
| **ANTONIO II, LIMITED PARTNERSHIP** | § | |
| **d/b/a REGENT CARE CENTER OF** | § | |
| **OAKWELL FARMS,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**

TO:   **Honorable Orlando Garcia**
       **United States District Judge**

**I.   Introduction**

The matter before the court is the motion for summary judgment brought by Defendant Regent Care Center of San Antonio II, d/b/a Regent Care Center of Oakwell Farms (hereafter "Defendant").  Defendant filed the motion on January 13, 2012.[1]  On January 18, 2012, Defendant filed its motion to amend its motion for summary judgment which was granted on February 16, 2012.[2]  Plaintiff Aiman Abdulbaki (hereafter "Plaintiff") filed his response to the motion for summary judgment on February 3, 2012,[3] as well a response to the amended

---

[1] Docket Entry 18.

[2] Docket Entry 21.  Defendant's supplement to its motion for summary judgment is Docket Entry 33.

[3] Docket Entry 32.

1

summary judgment on February 23, 2012.[4]

After considering the motion for summary judgment and supplement to the motion for summary judgment,[5] Plaintiff's responses to those motions,[6] Defendant's replies,[7] the entirety of the record in this matter, and the applicable case, statutory and regulatory law, I recommend granting the motion for summary judgment (Docket Entries 18 and 32).

I have jurisdiction to enter this Report and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.[8]

## II.   Federal Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1331[9]and 29 U.S.C. §§ 2601, *et seq*.[10]

## III.  Background of the Case

Plaintiff Aiman Abdulbaki is Muslim and a Syrian-American.[11]  He was hired as Defendant's Director of Rehabilitation for its Oakwell Farms facility in March of 2009.[12]

---

[4] Docket Entry 38.

[5] Docket Entries 18 and 33.

[6] Docket Entries 32 and 38.

[7] Docket Entries 34 and 43.

[8] Docket Entry 22.

[9] 28 U.S.C. § 1331 grants federal district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.

[10] 28 U.S.C. §§ 2601, *et seq*. is the Family and Medical Leave Act ("FMLA").

[11] Docket Entry 32, Exhibit 1 (Deposition of Aiman Abdulbaki), at 67; Exhibit 2 (Affidavit of Aiman Abdulbaki), ¶ 2.

[12] Docket Entry 32, Exhibit 2, ¶ 5.

Plaintiff's first supervisor, Trudy Venette, allowed Plaintiff to work a flexible schedule pursuant to which he arrived at the facility around 9 a.m. and worked in the building until 1 or 2 p.m.[13] Later in the day, he would log onto the facility's computer system to work remotely from home. Plaintiff contends the schedule was mandated by the demands of his job, including the need to finalize his employees' schedules and input the day's departmental data after the close of business. Plaintiff stated in his deposition that he worked as a physical therapist in his wife's medical practice in the afternoons.[14] When Ms. Venette resigned on September 30, 2009,[15] Mr. Roberto "Bob" Martinez became the interim administrator at the facility.[16]

In a team meeting on October 20 or 27, 2009, Mr. Martinez stated that some of the residents at the facility "complained that the staff were making terroristic threats against each other and I don't believe that because Aiman was not working last night."[17] Plaintiff felt humiliated by the comment and believed it to be a derogatory reference to his religion and national origin.[18] Plaintiff mentioned that he was Syrian and Muslim to Mr. Martinez earlier in the 2009 year.[19]

---

[13] Docket Entry 32, Exhibit 1, at 103; Exhibit 2, ¶ 8.

[14] Docket Entry 32, Exhibit 1, at 128. **See** Docket Entry 18, Exhibit C (Deposition of Aiman Abdulbaki), at 126; Exhibit E (Deposition of Dr. Marianne Pinkston), at 77.

[15] Docket Entry 18, Exhibit B (Affidavit of Sue Chiles), at 2.

[16] Docket Entry 32, Exhibit 2, ¶ 10; Exhibit 4 (Deposition of Roberto Martinez), at 38.

[17] Docket Entry 32, Exhibit 1, at 63; Exhibit 2, ¶ 12.

[18] Docket Entry 32, Exhibit 2, ¶ 13.

[19] Docket Entry 32, Exhibit 1, at 74; Exhibit 2, ¶ 14. There is disputed evidence in the record regarding Mr. Martinez's knowledge of Plaintiff's religion. Although Plaintiff stated in his affidavit that Mr. Martinez knew Plaintiff was Muslim (Docket Entry 32, Exhibit 2, ¶ 14), Plaintiff testified in his deposition that Mr. Martinez was unaware of Plaintiff's religion. Docket Entry 18, Exhibit C, at 66. For the purpose of assessing the motion for summary judgment, the court will accept Plaintiff's allegation as true that Mr. Martinez knew Plaintiff was Muslim.

In January 2010, Mr. Martinez met with Plaintiff and expressed his concerns about Plaintiff's flexible work schedule.[20]  He told Plaintiff that he wanted to track Plaintiff's time and asked Plaintiff to clock in and clock out of the facility.[21]  Mr. Martinez also asked Plaintiff to start working in the building from 9 a.m. to 6 p.m. every week day.[22]  Since he was a salaried, management-level employee, Plaintiff believed the demand for him to clock in and clock out was both illegal (from a labor law perspective) and discriminatory on the basis of his national origin and religion.[23]  Although there were additional conversations (as discussed below) about the need for Plaintiff to be present in the facility from 9 a.m. to 6 p.m. and to clock in and out, Plaintiff never started those employment protocols while working for Defendant.[24]

Plaintiff had a second meeting with Mr. Martinez in the middle of January 2010.[25] During that meeting, Mr. Martinez asked about Plaintiff's failure to maintain a regular caseload of physical therapy patients.[26]  Mr. Martinez also reiterated his desire for Plaintiff to work a regular schedule of 9 a.m. to 6 p.m.[27]

About this same time, Mr. Martinez had another informal discussion with Plaintiff about

---

[20] Docket Entry 32, Exhibit 1, at 88, 98.

[21] Docket Entry 32, Exhibit 1, at 88, 90, 98.

[22] Docket Entry 32, Exhibit 1, at 94, 96, 115, 120, 121.

[23] Docket Entry 32, Exhibit 1, at 101-102.

[24] Docket Entry 32, Exhibit 1, at 96-98, 188; Docket Entry 18, Exhibit C (Deposition of Aiman Abdulbaki), at 97.

[25] Docket Entry 32, Exhibit 1, at 100, 189.

[26] Docket Entry 32, Exhibit 1, at 100.

[27] **Id**.

the number of patients under Plaintiff's care who were enrolled in Medicare Part B.[28]  At the end

of that conversation, Mr. Martinez told Plaintiff he had hired a new administrator for the facility

who was going to "take care" of Plaintiff.[29]

Plaintiff exchanged a series of emails with Mr. Martinez on or about January 22, 2010,

which indicated Plaintiff contemplated resigning his position.[30]  In those emails, which were also

carbon-copied to Carol Ostermeyer the Chief Financial Officer of Regent Management Services,

Ltd., Mr. Martinez stated his intention to devise a way to track the hours Plaintiff worked.[31]  He

wrote, "Your current schedule may be acceptable as long as some provision of proof is exhibited

of time spent…."[32]

On February 16, 2010, Plaintiff called Sue Chiles, the Human Resources Manager for

Regent Management Services,[33] to discuss Mr. Martinez's desire that Plaintiff work from 8 a.m.

to 5 p.m. in the building.[34]  Ms. Chiles explained that the customary practice was to have the

Rehabilitation Director work a regular schedule.[35]  She also told Plaintiff that Mr. Martinez had

the authority to make changes to the schedule Plaintiff established with Ms. Venette.[36]  There is

---

[28] Docket Entry 32, Exhibit 1, at 124-125.

[29] **Id**.

[30] Docket Entry 32, Exhibit 6.  The subject line of the email is "resignation."  **See also** Docket Entry 32, Exhibit 2, ¶ 18; Docket Entry 18, Exhibit G (Affidavit of Carol Ostermeyer)..

[31] Docket Entry 32, Exhibit 6.

[32] **Id**.

[33] Docket Entry 18, Exhibit B.

[34] Docket Entry 18, Exhibit B-2.

[35] **Id**.

[36] **Id**.

no evidence that Plaintiff complained of discrimination based on his national origin or religion in that conversation.[37]

Ms. Maria Viray was hired as the new administrator on April 1, 2011.[38]  Shortly after becoming his supervisor, Ms. Viray met with Plaintiff and asked him to work in the building from 8:30 a.m. to 5:30 p.m. and to clock in and out so she would know when he was in the facility.[39]  When Plaintiff asked if other employees were required to maintain the same schedule, Ms. Viray told him they were not without further explanation.[40]  Ms. Viray also directed Plaintiff to cease using his personal blackberry phone, which he had configured on his own to receive work emails, for business purposes.[41]  Plaintiff felt singled out by this request since he believed that all of Defendant's management-level employees used a blackberry for work purposes.[42]

At some time after Mr. Martinez's comment about terroristic threats, Ms. Ostermeyer was visiting Plaintiff's facility.  When he saw her outside the door of the administration office, he inquired about a new, potential regional director of rehabilitation position.[43]  In the course of this conversation, Plaintiff said, "did you know that Bob called me a terrorist in the meeting?"[44]  Ms.

---

[37] **Id**.

[38] Docket Entry 32, Exhibit 2, ¶ 25.

[39] Docket Entry 32, Exhibit 1, at 115, 194-195.

[40] Docket Entry 32, Exhibit 2, at ¶ 25.

[41] Docket Entry 32, Exhibit 1, at 195.

[42] Docket Entry 32, Exhibit 1, at 196.

[43] Docket Entry, 32, Exhibit 1, at 204.

[44] Docket Entry 32, Exhibit 1, at 204.

Ostermeyer offered no response.[45]  Plaintiff never again complained about Mr. Martinez to Ms. Ostermeyer.[46]

On April 9, 2010, Plaintiff's diverticulosis flared up causing him severe pain.[47]  After Plaintiff saw his primary care physician, who is also his wife, he called Ms. Viray on April 13 or 14 to tell her he would be absent from work.[48]  During that conversation, he asked about the need to take FMLA leave.[49]  Ms. Viray directed Plaintiff to call Jessica Garza in the Human Resources department.  Ms. Garza told Plaintiff to provide a note from his doctor but that he need not take FMLA leave if he would only be absent for a few days.[50]

On April 21, 2010, Plaintiff's physician faxed a note that stated Plaintiff was under medical care and would "be able to return to work/school on 4/23/2010."[51]  Plaintiff asserts that he did not see the note before it was faxed and believed that it said he would be out of work through Friday, April 23.[52]  When Plaintiff failed to appear for work or call in his absence on the morning of April 23, Ms. Viray terminated Plaintiff on the basis that Plaintiff committed gross misconduct pursuant to Defendant's No Call, No Show Policy.[53]

---

[45] **Id**.

[46] Docket Entry 32, Exhibit 1, at 205.

[47] Docket Entry 32, Exhibit 1, at 38, 55; Exhibit 2, ¶ 28.

[48] Docket Entry 32, Exhibit 1, at 38.

[49] Docket Entry 32, Exhibit 1, at 50-51.

[50] Docket Entry 32, Exhibit 1, at 52, 219.

[51] Docket Entry 32, Exhibit 1, at 34, 221.

[52] Docket Entry 32, Exhibit 2, ¶ 31.

[53] Docket Entry 32, Exhibit 12 (Deposition of Maria Viray), at 55.  **See also** Docket Entry 32, Exhibit 13 (Excerpt from Defendant's Employee Handbook).

On Monday, April 26, Plaintiff felt badly as he drove to work.  He left Ms. Viray a voicemail that he was returning to his doctor.[54]  During the 10 a.m. morning meeting, Ms. Viray announced that Plaintiff had resigned on Friday, April 23.[55]  After that meeting, a co-worker sent Plaintiff a text message to tell him he would be missed.[56]  Plaintiff then telephoned Ms. Garza to ask if she had faxed him the FMLA paperwork.[57]  At 3:38 pm on Monday, April 26, Plaintiff faxed in a request for FMLA paperwork to Ms. Garza.[58]  On April 27 at 4:12 p.m., Plaintiff's physician faxed in a revised note stating that Plaintiff had been under her care from April 19 to the 26 and would return to work on May 17, 2010.[59]   Later that day, Plaintiff received a certified letter and disciplinary form informing him of his termination.[60]

Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission on June 15, 2010.[61]  In the charge, Plaintiff alleged that he was the victim of discrimination based on his national origin and religion from November 10, 2009 until April 23, 2010.[62]  Plaintiff enumerated the acts of discrimination as: (1) being "subjected to a 'terrorist' slur;" (2) being the only Director required to clock in and clock out; and (3) being terminated.

---

[54] Docket Entry 32, Exhibit 1, at 222-223, Exhibit 2,¶ 32.

[55] Docket Entry 32, Exhibit 1, at 224.

[56] Docket Entry 32, Exhibit 1, at 224; Exhibit 2, ¶ 33.

[57] Docket Entry 32, Exhibit 1, at 224.

[58] Docket Entry 18, Exhibit A-4.

[59] Docket Entry 18, Exhibit A-5; Docket Entry 32, Exhibit 7.

[60] Docket Entry 32, Exhibit 2, ¶ 35; Exhibit 10.

[61] Docket Entry 32, Exhibit 8.

[62] **Id**.

The EEOC issued Plaintiff a dismissal and right to sue notice on September 28, 2010.[63]  Plaintiff also received a Notice of Right to File a Civil Action from the Texas Workforce Commission Civil Rights Division on December 13, 2010.[64]

Plaintiff filed his Original Petition, Cause Number 2011CI-02307, in the 407th Judicial District of Bexar County, Texas on February 11, 2011.[65]  Defendant then removed the action on March 16, 2011, asserting that this court has federal question jurisdiction because Plaintiff seeks relief in part for violations of the Family and Medical Leave Act ("FMLA").[66]  Defendant moves for summary judgment on all Plaintiff's causes of action.

## IV.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment on some or all causes of action in a complaint when there are no genuine, disputed issues of material fact and that party is entitled to judgment as a matter of law.[67]  A fact is a "material fact" if it "might affect the outcome of the suit under the governing law…."[68]  A dispute concerning a material fact is "'genuine'….if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[69]  If reasonable fact finders could resolve a factual issue in favor of

---

[63] Docket Entry 32, Exhibit 9; Docket Entry 18, Exhibit A-6.

[64] Docket Entry 18, Exhibit A-6.

[65] Plaintiff's Original Petition is attached as an exhibit to Defendant's Notice of Removal, Docket Entry 1.

[66] Docket Entry 1.

[67] Fed.R.Civ.P. 56(a).  **And See Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).

[68] **Anderson v. Liberty Lobby**, 477 U.S. 242, 248 (1986); **Thomas v. LTV Corp.**, 39 F.3d 611, 616 (5th Cir. 1994).

[69] **Anderson**, 477 U.S. at 248.

either party, summary judgment should not be granted.[70]   The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[71]   Once the movant has satisfied his initial burden, the burden then shifts to the nonmoving party to "present affirmative evidence in order to defeat" the motion.[72]   The nonmoving party "need only present evidence from which a jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact that requires a trial."[73]

## V.   Analysis

Plaintiff seeks damages based upon the following causes of action: (1) National Origin/Religious Discrimination; (2) Retaliation; (3) Harassment and Hostile Work Environment; and (4) Violation of the Family and Medical Leave Act.[74]   Defendant asserts there are no genuine, disputed issues of material fact as to any of the causes of action presented in Plaintiff's complaint such that summary judgment is warranted on all claims.[75]

### A.      The National Origin/Religious Discrimination Cause of Action

Plaintiff's first cause of action seeks relief on the basis that he was subjected to national origin and religious discrimination while he was employed by Defendant in violation of Texas

---

[70] **Anderson**, 477 U.S. at 249.

[71] **Celotex**, 477 U.S. at 323, *quoting* Fed. R. Civ. P. 56.

[72] **Anderson**, 477 U.S. at 257.

[73] **Id**.

[74] Docket Entry 1.

[75] Docket Entries 18 and 33.

Labor Code § 21.051.  Defendant asserts that it is entitled to summary judgment on this claim

because Plaintiff cannot establish that Defendant's basis for terminating Plaintiff was a mere

pretext for discrimination.

Texas Labor Code Chapter 21 was enacted to execute the policies of Title VII of the Civil

Rights Act of 1964 and Title I of the Americans with Disabilities Act.[76]  Chapter 21 includes the

Texas Commission on Human Rights Act ("TCHRA") which provides

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> > (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
> >
> > (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual or any employment opportunity or adversely affect in any other manner the status of an employee.[77]

The Act explains, in pertinent part, that

> an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice….[78]

The Texas Supreme Court, recognizing the state Legislature's intention to "correlate state

law with federal law in employment discrimination cases," has mandated the application of "the

burden-shifting analysis established by the United States Supreme Court" in discrimination cases

brought under the TCHRA that have not gone to trial.[79]

---

[76] Tex. Lab.Code  § 21.001, *et seq.*

[77] Tex. Lab.Code  § 21.051.

[78] Tex.Lab.Code § 21.125(a).

[79] **Wal-Mart Stores v. Canchola**, 121 S.W.3d 735, 739 (Tex. 2003); **Quantum Chemical Corp. v. Toennies**, 47 S.W.3d 473, 476 (Tex. 2001).

The burden-shifting analysis requires the plaintiff in an employment discrimination action to establish a *prima facie* case by showing (1) he is a member of a protected class; (2) he was qualified for the employment position; (3) he was subjected to an adverse employment action; and (4) he was replaced by someone outside of his protected class and/or similarly situated employees were treated more favorably.[80]  If the plaintiff cannot prove an adverse employment action, he "cannot make the necessary prima facie cas[e] of discrimination…."[81]

Once the plaintiff has made his *prima facie* case, the burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason…." for the employment action.[82]  The defendant's burden "is one of production, not persuasion; it 'can involve no credibility assessment.'"[83]  If the employer can proffer a legitimate reason for its actions, the burden shifts back to the plaintiff to show by a preponderance of the evidence[84] that the reason "was in fact pretext."[85]  In conducting this analysis, "'[i]t is not enough…to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'"[86]

In this case, both parties concede that Plaintiff is a member of a protected class, as both a

---

[80] **Okoye v. University of Texas Houston Health Science Center**, 245 F.3d 507, 512-513 (5th Cir. 2001), *citing* **Shackelford v. Deloitte & Touche, LLP**, 190 F.3d 398, 404 (5th Cir. 1999); **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802 (1973).

[81] **McCoy v. City of Shreveport**, 493 F.3d 551, 557 (5th Cir. 2007).

[82] **McDonnell Douglas Corp.**, 411 U.S. at 801.

[83] **Reeves v. Sanderson Plumbing Products, Inc**., 530 U.S. 133, 142 (2000), *quoting* **St. Mary's Honor Center v. Hicks**, 509 U.S. 502, 509 (1993); **McCoy**, 492 F.3d at 557.

[84] **Reeves**, 530 U.S. at 143.

[85] **McDonnell Douglas Corp**, 411 U.S. at 804.

[86] **Reeves**, 530 U.S. at 147, *quoting* **St. Mary's Honor Center**, 509 U.S. at 519 (emphasis in original).

Syrian and a Muslim,[87] and was qualified for his position as Director of Rehabilitation.[88]

Plaintiff suffered an adverse employment action when he was terminated.[89]  Plaintiff was

replaced by Jose Santos, a man outside of Plaintiff's protected classes.[90]  Therefore, Plaintiff has

established a *prima facie* case of discrimination.

Defendant has similarly met its burden of producing a legitimate, nondiscriminatory

reason for Plaintiff's termination.  Defendant has proffered evidence that Plaintiff was fired for

violating the No Call, No Show policy—an act of misconduct which is deemed grounds for

immediate termination in the employee manual.[91]  That evidence shifted the burden to Plaintiff to

provide evidence that Defendant's purported reason for the discharge was a mere pretext for

discrimination.  To meet his burden, Plaintiff "'must produce substantial evidence of pretext.'"[92]

Plaintiff contends the following conduct fulfills his burden to establish that Defendant's

purported reason for the discharge was a pretext for national origin and religion based

---

[87] Docket Entry 32, Exhibit 2, ¶ 2.

[88] Docket Entry 32, Exhibit 4 (Deposition of Roberto Martinez), at 66.

[89]  The requirement that Plaintiff clock in and out cannot be construed as an adverse employment action for two reasons.  First, despite myriad discussions regarding the same, Plaintiff never clocked in or out at any time during his employment with Defendant.  Second, an adverse employment action "'means an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating.'" **Ptomey v. Texas Tech Univ.**, 277 S.W.3d 487, 492 (Tex.App.-Amarillo 2009), *quoting* **Foley v. Univ. of Houston Sys.**, 355 F.3d 333, 340 (5th Cir. 2003).  For the same reasons, being required to work a consecutive eight hour shift in the building cannot be construed as an adverse employment action in this case.  Furthermore, there is evidence that it was Plaintiff's idea to work the 9 a.m. to 6 p.m. shift (Docket Entry 32, Exhibit 3, Email from Aiman Abdulbaki to Roberto Martinez).  Finally, the requirement to work a specific shift was not enumerated in Plaintiff's charge with the EEOC.  Docket Entry 32, Exhibit 8.

[90] Docket Entry 32, Exhibit 11 (Deposition of Sue Chiles), at 24; Docket Entry 18, Exhibit A (Affidavit of Maria Viray), at 5.

[91] Docket Entry 18, Exhibit A-3; Docket Entry 32, Exhibit 12, at 55; Exhibit 13.

[92] **Wallace v. The Methodist Hospital System**, 271 F.3d 212,220 (5th Cir. 2001), *quoting* **Augster v. Vermillion Parish Sch. Bd.**, 249 F.3d 400, 402 (5th Cir. 2001).

discrimination: (1) the disparate treatment of Plaintiff as a management-level employee with respect to clocking in and out, maintaining an eight-hour schedule in the facility and forbidding the use of his personal blackberry for work emails; and (2) Mr. Martinez's "terrorist" comment.

Plaintiff first asserts that the disparate treatment to which he was subjected is evidence of pretext.  To establish disparate treatment, a plaintiff must "demonstrate ' that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained.'"[93]  The facts that Plaintiff's supervisors wanted him to clock in and out, maintain a regular schedule in the facility and refrain from using his personal blackberry for work are not sufficient to establish disparate treatment.  Plaintiff's termination was not predicated upon any of those issues.  Plaintiff was discharged for failing to call in or show up for work on April 23, 2010.  To establish disparate treatment as evidence of pretext, Plaintiff must proffer evidence that the No Call, No Show policy was applied more favorably to similarly situated, non-Syrian, non-Muslim employees.  Plaintiff submitted no such evidence.  Thus, Plaintiff cannot meet his burden of establishing pretext by a showing of disparate treatment.

Plaintiff also asserts that Mr. Martinez's terrorist comment is proof that his discharge was motivated by discrimination.  For workplace comments to

> provide sufficient evidence of discrimination, they must be '(1) related to the protected
> class of persons of which the plaintiff is a member; (2) proximate in time to the
> complained-of adverse employment decision; (3) made by an individual with authority
> over the employment decision at issue; and (4) related to the employment decision at

---

[93] **Wallace v. The Methodist Hospital System**, 271 F.3d 212, 221 (5th Cir. 2001), *quoting* **Smith v. Wal-Mart Stores (No. 471)**., 891 F.2d 1177, 1180 (5th Cir. 1990)(brackets omitted from quotation); **Janssen Pharmaceutica, Inc. v. Martinez**, 296 S.W.3d 634, 641 (Tex.App.-El Paso 2009).

14

issue."[94]

If remarks meet the aforementioned four criteria, "they are probative of discriminatory intent" provided that they "are not the only evidence of pretext."[95]   In contrast, "[c]omments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment.'"[96]

In this case, drawing all inferences in Plaintiff's favor, Mr. Martinez's comment connecting terroristic threats to the Plaintiff can be interpreted to be related to the protected classes of persons (Muslim and Syrian) to which Plaintiff belongs.   However, the October comment was made six months before Plaintiff's April termination and was not, therefore, proximate in time to the adverse employment action.   Similarly, the comment was not related in any way to Plaintiff's termination.[97]   Finally, the evidence establishes that, while Mr. Martinez made the comment, Ms. Viray made the decision to terminate Plaintiff.   Thus, Mr. Martinez's terrorist comment constitutes a "stray remark" and "is not evidence of intentional discrimination."[98]

Plaintiff insists that while Ms. Viray was the formal decisionmaker for the discharge she

---

[94] **Patel v. Midland Memorial Hospital and Med. Center**, 298 F.3d 333, 343-344 (5th Cir. 2002), *quoting* **Rubinstein v. Adm'rs of the Tulane Educ. Fund**, 218 F.3d 392, 400-401 (5th Cir. 2000)(*quoting* **Brown v. CSC Logic, Inc.**, 82 F.3d 651, 655 (5th Cir. 1996)(internal brackets omitted); **Jackson v. Cal-Western Packaging Corp.**, 602 F.3d 374, 380 (5th Cir. 2010).

[95] **Palasota v. Haggar Clothing Co.**, 342 F.3d 569, 577 (5th Cir. 2003).

[96] **Jackson**, 602 F.3d at 380.

[97] **Jackson**, 602 F.3d at 380, "The comment appears wholly unrelated to Jackson's termination…."

[98] **Wallace**, 271 F.3d at 223.

was, in truth, acting on behalf of Mr. Martinez.[99]  Through this argument, Plaintiff is attempting to invoke the "cat's paw" theory.[100]  The "discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp or the 'cat's paw,' for the…employee's prejudice.'"[101]  Stated another way, "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker…it is proper to impute their discriminatory attitudes to the formal decisionmaker."[102]

To prevail on his theory that Ms. Viray was acting as the cat's paw to enact Mr. Martinez's discrimination, Plaintiff must necessarily establish Mr. Martinez's animus against Plaintiff based on his national origin and religion.[103]  The only evidence Plaintiff has of Mr. Martinez's discriminatory bias is Mr. Martinez's comment that he hired someone to "take care" of Plaintiff and the "terrorist" comment.  The "take care" comment is "ambiguous at best in [its]

---

[99] In support of this proposition, Plaintiff asserts that Ms. Viray contacted Mr. Martinez when making the termination decision.  However, the evidence establishes that Ms. Viray called Mr. Martinez to inform him of her decision to terminate Plaintiff not to seek advice regarding the same.  Docket Entry 18, Exhibit A (Affidavit of Maria Viray), at 4; Docket Entry 32, Exhibit 4 (Deposition of Roberto Martinez), at 98, 102.  Similarly, Plaintiff alleges that Ms. Viray ignored Sue Chiles' request to contact Plaintiff before terminating him.  Docket Entry 32, at 15-16.  In contrast, Ms. Chiles testified that she suggested Ms. Viray call Plaintiff to inform him of his termination before he received the termination letter- not to investigate the basis for the termination.  Docket Entry 32, Exhibit 11, at 41-42.

[100] **Laxton**, 333 F.3d 572, 584-585 (5th Cir. 2003); **Russell v. McKinney Hospital Venture**, 235 F. 3d 219, 226-227 (5th Cir. 2000).

[101] **Laxton**, 333 F.3d at 584, *quoting* **Russell**, 235 F.3d at 227.

[102] **Russell**, 235 F.3d at 226.

[103] Plaintiff, relying on **Staub v. Proctor Hosp.**, insists that the cat's paw analysis is equally valid even in a case where a supervisor used some level of her own discretion in making the decision to terminate.  ("The mere fact that Viray exercised judgment does not make the link to the bias of Mr. Martinez remote or purely contingent.")  Docket Entry 32, at 16; **Staub v. Proctor Hosp.**, 131 S.Ct.1186 (2011).  In **Staub**, a "cat's paw case" brought under the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Court held that the "ultimate decisionmaker's exercise of judgment…." does not "automatically rende[r] the link to the supervisor's bias 'remote' or 'purely contingent.'" **Staub**, 131 S. Ct. at 1192.  As previously discussed, however, the plaintiff must first proffer evidence of such discriminatory bias before he can succeed on establishing that the bias motivated the decision to discharge.  For this same reason, Plaintiff's assertions that Ms. Viray frequently commented that she made decisions because "that's what Mr. Bob wanted" are unavailing.  Docket Entry 32, at 15-16.

meaning, and, in any event, inapplicable…as [it] does not related to the protected class of which [Plaintiff] is a member."[104]  Similarly, Mr. Martinez's one-time comment—made six months before Plaintiff's termination and without any relation to the same—is a mere stray remark.[105] For these reasons, Plaintiff failed to raise a face question about whether Defendant's decision to terminate him was a pretext for discrimination.

Finally, Plaintiff also argued that Ms. Viray's decision to terminate him when she had discretion under the No Call, No Show policy to impose less severe discipline is further evidence of discrimination.  It is undisputed, however, that: (1) Plaintiff submitted a note from his physician which stated Plaintiff would return to work on April 23;[106] (2) Plaintiff neither returned to work nor called Ms. Viray to inform her of his absence on April 23; and (3) Defendant had a No Call, No Show policy which expressly stated that said behavior is grounds for immediate termination.[107]  The "evidence is undisputed that [Plaintiff] engaged in the acts for which [Defendant] terminated [him]."[108]  Because an "employer does not incur liability for carelessly forming its reasons for termination,"[109] it is not enough for Plaintiff to provide evidence that the decision "was imperfect, incomplete, or arrived at a possibly incorrect conclusion.  He must show that the reason proffered by the [Defendant] is 'false, *and* that discrimination was the real

---

[104] **Rubinstein v. Adm'rs of the Tulane Educ. Fund**, 218 F.3d 392, 401 n. 3 (5th Cir. 2000)

[105] **Patel**, 298 F.3d at 343.

[106] Docket Entry 32, Exhibit 7.

[107] Docket Entry 32, Exhibit 13.

[108] **Wallace**, 271 F.3d at 226.

[109] **Canchola**, 121 S.W. 3d at 740.

reason.'"[110]  The ultimate "question for summary judgment is whether a rational fact finder could find that the employer discriminated against" the plaintiff on the basis of his protected status.[111] In this case, Plaintiff has failed to establish the same.  As a result, Defendant is entitled to summary judgment on Plaintiff's causes of action for national origin and religious discrimination.

**B.      Retaliation Cause of Action**

Defendant also seeks summary judgment on Plaintiff's retaliation cause of action.[112] Defendant argues that Plaintiff can neither establish a *prima facie* case of retaliation nor prove that Defendant's legitimate reason for termination was a mere pretext for retaliation.[113]

Retaliation causes of action are assessed using a burden-shifting analysis very similar to those for discrimination claims.[114]  To make a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in a protected activity; (2) he suffered an adverse employment action; and "(3) a causal connection exists between the protected activity and the adverse employment action."[115]  Once the plaintiff meets his initial burden, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its

---

[110] **Id**., *quoting* **St. Mary's Honor Center**., 509 U.S. at 515 (emphasis in original); **Reeves**, 530 U.S. at 146-147, *quoting* **St. Mary's Honor Center**., 509 U.S. at 524. "proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason…is correct.'"

[111] **Patel**, 298 F.3d at 342.

[112] Docket Entry 18, at 14-17.

[113] **Id**.

[114] **Rubinstein**, 218 F.3d at 401-402.

[115] **McCoy**, 492 F.3d at 556-557.

18

employment action."[116]  If the defendant satisfies its burden, the plaintiff "bears the ultimate

burden of proving that the employer's proffered reason is not true but instead is a pretext for the

real discriminatory or retaliatory purpose.  To carry this burden, the plaintiff must rebut each

nondiscriminatory or nonretaliatory reason articulated by the employer."[117]  The plaintiff "does

not have to prove that his 'protected conduct was the sole factor in motivating'" the adverse

employment action.[118]  However, "even if a plaintiff's protected conduct is a substantial element

in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if

the employee would have been terminated even in the absence of the protected conduct."[119]

In this case, Plaintiff cannot establish a *prima facie* case of retaliation because he only has

evidence to support one of the three elements of the cause of action, namely that he suffered an

adverse employment action when he was terminated.  Plaintiff can neither prove that he

participated in a protected activity nor establish a causal link between any such activity and his

termination.

Plaintiff contends that his oral and written discussions with Sue Chiles and Carol

Ostermeyer about his alleged mistreatment rise to the level of protected activity.[120]  Title VII of

the Civil Rights Act provides

> An employee has engaged in protected activity when he or she has (1) 'opposed any
> practice made an unlawful employment practice by this subchapter,' or (2) made a charge,

---

[116] **McCoy**, 492 F.3d at 557.

[117] **McCoy**, 492 F.3d at 557, *citing* **Laxton v. Gap**, 333 F.3d at 578.

[118] **Rubinstein**, 218 F.3d at 403.

[119] **Rubinstein**, 218 F.3d at 402-403, *citing* **Jack v. Texaco Research Center,** 743 F.2d 1129, 1131 (5th Cir. 1984).

[120] Docket Entry 32, at 16-18.

testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'[121]

Similarly, Texas Labor Code 21.055 establishes that "an employer commits an unlawful employment practice if it retaliates against an employee who: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."[122]  For Plaintiff's complaints to rise to the level of protected activity, therefore, they must have contained allegations not of general mistreatment but of mistreatment arising out of discrimination based on Plaintiff's national origin or religion.

Plaintiff has proffered evidence of only one such conversation—his discussion with Carol Ostermeyer in front of the administration office in February 2010 four months after Mr. Martinez's alleged derogatory remark.[123]  Plaintiff testified that he mentioned the terrorist comment to Ms. Ostermeyer during a conversation about a possible new employment position. The scenario presented by Plaintiff has none of the hallmarks of the kind of complaint that would rise to the level of protected activity.[124]  Plaintiff did not call a meeting for the purpose of reporting the comment.  Plaintiff mentioned the statement in a discussion about another matter.

---

[121] **Aryain v. Wal-Mart Stores Texas LP**, 534 F.3d 473, 484 n.8 (5th Cir. 2008), *quoting* 42 U.S.C. § 2000e-3(a).

[122] **Ptomey v. Texas Tech Univ**., 277 S.W.3d 487, 495 (Tex.App.-Amarillo 2009), *citing* Tex. Lab. Code Ann. § 21.055 (Vernon 2006).

[123] Docket Entry 32, Exhibit 1, at 204.

[124] Plaintiff relies on **Wilson v. Willowbrook** for the assertion that even an informal complaint of discriminatory conduct is sufficient to constitute protected activity.  Docket Entry 32, at 17; **Wilson v. Willowbrook**, 433 F.Supp.321 (N.D. Tex. 1977).  In that case, the court held that the plaintiff's actions in drafting and circulating (but not filing) an EEOC petition qualified as protected activity under Title VII.  In contrast, the conversation with Ms. Ostermeyer at issue in this case was not a deliberate, targeted attempt to report or complain about the alleged discrimination.

Plaintiff told Ms. Ostermeyer about the remark in public.  Plaintiff did not ask for remedial action or protection.

Even assuming, *arguendo*, that the complaint rises to the level of protected activity, there is no evidence of a causal connection between Plaintiff's one-time conversation with Carol Ostermeyer and his termination.[125]  Nothing in the record suggests that Ms. Ostermeyer ever conveyed her discussion with Plaintiff to anyone else, let alone Ms. Viray or Mr. Martinez.[126] Plaintiff contends that the temporal proximity between his complaint to Ms. Ostermeyer in February 2010[127] and his termination in April 2010 is sufficient to raise the inference of discriminatory conduct when combined with the absence of a legitimate, non-discriminatory reason for Plaintiff's termination.[128]  However, the Supreme Court has held that in order for temporal proximity to be sufficient to establish the causal link requirement for a *prima facie* case of retaliation, it must be "'very close,'" noting that even a three month period between the protected activity and the termination were insufficient.[129]

Moreover, Defendant met produced evidence of a legitimate, non-retaliatory reason for the termination.  The undisputed facts establish that Plaintiff's absence from work on April 23

---

[125] Plaintiff's termination is the only evidence of an adverse employment action in the record.  The requests for him to clock in and out, maintain an eight hour work day in the facility and refrain from using his personal blackberry for work purposes "do not rise to the level of material adversity."  **Aryain**, 534 F.3d at 485.  An action is "materially adverse" if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" **Aryain**, 534 F.3d at 484, *quoting* **Burlington N. & Santa Fe Ry. Co. v. White**, 548 U.S. 53, 68 (2006).

[126] Docket Entry 32, Exhibit 4 (Deposition of Roberto Martinez), at 74, 102; Docket Entry 18, Exhibit G (Affidavit of Carol Ostermeyer).

[127] Docket Entry 32, Exhibit 1 at 177, 203-204.

[128] Docket Entry 32, at 17-18.

[129] **Clark County School Dist. v. Breeden**, 532 U.S. 268, 273-74 (2001), *citing* **Richmond v. ONEOK**, 120 F.3d 205, 209 (10 Cir. 1997).

violated Defendant's No Show, No Policy.  Plaintiff must, ultimately, show that but-for his

hallway complaint to Ms. Ostermeyer he would not have been discharged.  The only evidence

Plaintiff has to rebut Defendant's termination rationale is the temporal proximity between the

February conversation and his April discharge.[130]

While temporal proximity can be one of several factors that establish a retaliatory motive

for termination, the Fifth Circuit has expressly stated that it "alone is insufficient to prove but for

causation."[131]  The Court held:

> To prevent future litigants from relying on temporal proximity alone to establish but for
> causation, we once again attempt to clarify the issue….[W]e affirmatively reject the
> notion that temporal proximity standing alone can be sufficient proof of but for causation.
> Such a rule would unnecessarily tie the hands of employers.[132]

For these reasons, Plaintiff failed to meet his burden to raise genuine, disputed issues of material

fact exist with respect to his retaliation cause of action.  Defendant is entitled to summary

judgment on Plaintiff's retaliation claim.

### C.      Harassment and Hostile Work Environment Cause of Action

Defendant also contends that Plaintiff's claim for harassment and hostile work

environment fail as a matter of law.[133]  Defendant argues that Mr. Martinez's single terrorist

comment is insufficient to support a cause of action for harassment.  Defendant further asserts

that Plaintiff cannot tie any of the other alleged acts of harassment to hostility towards Plaintiff's

national origin or religion.  For these reasons, Defendant seeks summary judgment on Plaintiff's

---

[130] Docket Entry 32, at 17-18.

[131] **Strong v. Univ. Healthcare Sys.**, 482 F.3d 802, 808 (5th Cir. 2007).

[132] **Strong**, 482 F.3d at 808.

[133] Docket Entry 18, at 17-19.

harassment claim.

Plaintiff's claim for harassment arises under the TCHRA's prohibition against discrimination "against an individual in connection with compensation or the terms, conditions, or privileges of employment" on the basis of his "race, color, disability, religion, sex, national origin, or age…."[134]   The TCHRA is interpreted with reference to Title VII of the Civil Rights Act of 1964.  Title VII similarly forbids discrimination based on an individual's protected status with respect to the "compensation, terms, conditions, or privileges of employment"[135] and makes clear the congressional intent to protect employees from "a discriminatorily hostile or abusive environment."[136]   To be actionable, the conduct must: (1) "create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive…." and (2) be subjectively perceived as abusive by the victim such that it "actually altered the conditions of the victim's employment."[137]   The Supreme Court held

> whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.[138]

Although Plaintiff asserts that he was subjected to ongoing, continuous harassment,[139] the

---

[134] Tex. Lab. Code § 21.051.

[135] 42 U.S.C. § 2000e-2(a)(1).

[136] **Harris v. Forklift Sys.**, 510 U.S. 17, 21 (1993).

[137] **Harris**, 510 U.S. at 21.

[138] **Harris**, 510 U.S. at 23.

[139] Docket Entry 32, at 18-19.

only allegation of harassment that is tied to Plaintiff's national origin and religion[140] is Mr.

Martinez's "terrorist" comment.  The Supreme Court has made it clear that the "'mere utterance

of an…epithet which engenders offensive feelings in a (*sic*) employee,' does not sufficiently

affect the conditions of employment to implicate Title VII."[141]  Because the only evidence to

support Plaintiff's claim of harassment based on his national origin and religion is Mr.

Martinez's single comment, Plaintiff's cause of action fails as a matter of law.  Defendant is

entitled to summary judgment on Plaintiff's harassment claim.

### D.    Violation of Family and Medical Leave Cause of Action

The Family Medical Leave Act was "enacted to permit employees to take reasonable

leave for medical reasons, for birth or adoption of a child, and for the care of a child, spouse, or

parent who has a serious health condition."[142]  Two theories of recovery are available under the

Act: interference[143] and retaliation.[144]  Plaintiff asserts both theories of recovery.  Defendant

contends it is entitled to summary judgment on both claims.[145]

### 1.    Plaintiff's FMLA Interference Cause of Action

---

[140] In order to establish a claim for hostile work environment harassment under Title VII, a plaintiff must establish that he was: (1) a member of a protected class; (2) subjected to unwelcome harassment; (3) the harassment was based upon the plaintiff's membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  **Jones v. Flagship Int'l**, 793 F.2d 714, 720-721 (5th Cir. 1986)

[141] **Harris**, 510 U.S. at 21, *quoting* **Meritor Savings Bank, FSB v. Vinson**, 477 U.S. 57, 67 (1986)(internal quotation marks omitted).  **See Rogers v. E.E.O.C.**, 454 F.2d 234, 238 (5th Cir. 1971); **Farpella-Crosby v. Horizon Health Care**, 97 F.3d 803, 806 (5th Cir. 1996); **Henson v. City of Dundee**, 682 F.2d 897, 904 (11th Cir. 1982).

[142] **Bocalbos v. Nat'l Western Life Ins.**, 162 F.3d 379, 382 (5th Cir. 1998); 29 U.S.C. § 2601(b)(1) & (2).

[143] 29 U.S.C. § 2615(a)(1).

[144] 29 U.S.C. § 2615(a)(2).

[145] Docket Entries 18, 33, 34, 43.

Defendant asserts that Plaintiff is unable to establish the requisite elements of a FMLA interference cause of action.[146]  Plaintiff argues that the facts "establish a prima face case of a violation of U.S.C. § 2615(a)(1) of the FMLA and that Defendant interfered with his rights under the Act and denied [him] the full benefits of leave for which he was eligible under the FMLA."[147]

The FMLA's "interference" clause "creates prescriptive rights"[148] and forbids an employer from interfering with an employee's exercise of his rights under the Act.[149]  It provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."[150]  To prevail on his interference claim, Plaintiff must show that: (1) he was an eligible employee; (2) Defendant is a covered employer; (3) he was entitled to leave under the FMLA; (4) he gave notice of his intent to take leave; and (5) Defendant denied him FMLA benefits or interfered with FMLA rights to which he was entitled.[151]  An "employee must establish these elements by a preponderance of the evidence."[152]

Defendant first asserts that summary judgment on Plaintiff's FMLA cause of action is warranted because Plaintiff was neither an eligible employee nor entitled to leave under the

---

[146] Docket Entry 18, at 19-20.

[147] Docket Entry 38, at 20.

[148] **Hoge v. Honda of Am. Mfg.**, 384 F.3d 238, 244 (6th Cir. 2004).

[149] 29 U.S.C. § 2615(a)(1).

[150] **Id**.

[151] **Hoge**, 384 F.3d at 244, *citing* **Cavin v. Honda of Am.Mfg., Inc.**, 346 F.3d 713, 719 (6th Cir. 2003); **Wysong v. Dow Chem. Co.**, 503 F.3d 441, 447 (6th Cir. 2006).  "This inquiry is an objective one divorced from the employer's motives, with the central question being simply whether the employee was entitled to the FMLA benefits at issue."  **Edgar v. JAC Products**., 443 F.3d 501, 511 (6th Cir. 2006).

[152] **Wysong**, 503 F.3d at 447.

FMLA since he was terminated before he actually requested the leave.[153]   In opposition, Plaintiff argues that he was eligible for and entitled to FMLA leave.[154]   Plaintiff contends that even if the decision to terminate him had already been made when he requested the leave, he was not actually terminated until after he requested the leave on April 26 and, therefore, still entitled to protection from interference under the FMLA.   In support of this proposition, Plaintiff relies on the fact that his termination paperwork was signed and mailed on April 26.[155]

The undisputed facts establish that it was not only the decision to terminate Plaintiff—but the actual termination itself—occurred on April 23.   Even if accidentally, Plaintiff submitted a doctor's note that stated he would return to work on April 23.[156]   Plaintiff neither returned nor called in on April 23.   Ms. Viray decided to terminate and, in fact, did terminate Plaintiff on April 23.   The finality of Plaintiff's termination on April 23 is evidenced by Ms. Viray's undisputed announcement in the April 26 morning meeting that Plaintiff was no longer working for Defendant.   Therefore, Plaintiff was discharged and no longer an eligible employee when he requested FMLA.[157]

Plaintiff insists that his pre-April 23 discussion with Ms. Garza about FMLA is enough to

---

[153] While eligibility and entitlement to leave are two separate elements, they are considered together under the circumstances of this case.  "Eligibility" under the FMLA means that the employee is employed and has worked 1,250 hours in the preceding twelve months before requesting leave such that he may request the leave.  29 U.S.C. § 2611(2)(A)(i)-(ii).  "Entitlement" means that the purpose for which Plaintiff requests the leave—e.g. serious medical condition, need to care for a close family member—is a qualified reason under the Act and provides the employee twelve total workweeks of leave in a twelve month period.  29 U.S.C. § 2612(a).  In this case, if Plaintiff was terminated before he requested leave, he was neither eligible nor entitled.

[154] Docket Entry 32, at 19-22.

[155] Docket Entry 32, Exhibit 10; Docket Entry 38, Exhibit 14.

[156] Docket Entry, 32, Exhibit 7.

[157] **Brohm v. JH Properties**, 149 F.3d 517, 523 (6th Cir. 1998).

constitute notice under the Act.  The Regulations interpreting the FMLA require an employee to

provide "at least verbal notice sufficient to make the employer aware that the employee needs

FMLA-qualifying leave, and the anticipated timing and duration of the leave."[158]  Although an

employee seeking leave for the first time under FMLA "need not expressly assert rights under the

FMLA or even mention the FMLA,"[159] the Regulations explain that "[c]alling in 'sick' without

more information will not be considered sufficient notice to trigger an employer's obligations

under the Act."[160]  The ultimate inquiry with respect to notice under the Act is whether "the

information [Plaintiff] gave [Defendant] was 'sufficient to reasonably apprise it of [Plaintiff's]

request to take time off for a serious health condition.'"[161]

     The undisputed evidence establishes that Plaintiff did not notify his employer of his

intention to take FMLA leave until after he was terminated.  In the last conversation Plaintiff had

with Ms. Garza before his termination, he expressly declined FMLA leave.  At the time Ms.

Viray terminated Plaintiff, the information before her established he would return to work on

April 23.  "[N]othing in the statute places a duty on an employer to affirmatively grant leave

without such a request or notice by the employee.  Rather, to invoke the protection of the FMLA,

an employee must provide notice and a qualifying reason for requesting the leave."[162]  In this

---

[158] 29 C.F.R. § 825.302(c).

[159] 29 C.F.R. § 825.302(c); 29 C.F.R. § 825.301(b).  **See Manuel v. Westlake Polymers Corp.**, 66 F.3d 758, 764 (5th Cir. 1995), "We hold that the Family and Medical Leave Act of 1993 does not require an employee to invoke the language of the statute to gain its protection when notifying her employer of her need to leave for a serious health condition."

[160] 29 C.F.R. § 825.303(b).

[161] **Satterfield v. Wal-Mart Stores**, 135 F.3d 973, 977 (5th Cir. 1998), *citing* Fed. R. Civ. P. 50; **Boeing Co. v. Shipman**, 411 F.2d 365, 374-75 (5th Cir.1969)(en banc), overruled on other grounds, **Gautreaux v. Scurlock Marine**, 107 F.3d 331 (5th Cir. 1997) (en banc).

[162] **Brohm**, 149 F.3d at 523.

case, Plaintiff failed to provide the requisite notice before he was terminated.  For these reasons, Plaintiff's FMLA interference cause of action fails as a matter of law.  Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim.

### 2.      Plaintiff's FMLA Retaliation Cause of Action

Defendant asserts that Plaintiff is unable to maintain an FMLA retaliation cause of action because Plaintiff is unable to make a *prima facie* case of retaliation.[163]  In opposition, Plaintiff contends that he was a covered employee under the Act, incorporates by reference his arguments about Ms. Viray acting as the cat's paw for Mr. Martinez, and notes "that the termination took place the same day Mr. Abdulbaki requested the FMLA."[164]

The FMLA's "retaliation" clause creates "proscriptive rights"[165] and makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[166]  Retaliation claims under the FMLA are subject to a very similar burden shifting analysis to retaliation claims under Title VII.  A plaintiff must first establish a *prima facie* case of FMLA retaliation after which the defendant bears the burden of "articulat[ing] a legitimate nondiscriminatory or nonretaliatory reason for the termination."[167]  The burden then shifts back to the plaintiff to "show by a preponderance of the evidence that the employer's reason is a pretext for discrimination or retaliation."[168]

---

[163] Docket Entry 33.

[164] Docket Entry 38, at 21-22.

[165] **Hoge**, 384 F.3d at 244.

[166] 29 U.S.C. § 2615(a)(2).  **See Bocalbos**, 162 F.3d at 383.

[167] **Bocalbos**, 162 F.3d at 383.

[168] **Id**.

28

To make a *prima facie* case of FMLA retaliatory discharge, the employee must show: (1) he engaged in a protected activity; (2) he was discharged; (3) there is a causal link between the protected activity and the discharge.[169]   In this case, Plaintiff can only establish that he was discharged.  Plaintiff did not engage in a protected activity because he never actually applied for FMLA leave.[170]   Similarly, because Plaintiff was discharged before he informed Defendant of his intention to file for FMLA, there is no causal connection between his discharge and any request for FMLA.[171]

Even if Plaintiff were able to make his *prima facie* case, he is unable to establish that Defendant's legitimate reason for the discharge—Plaintiff's violation of the No Call, No Show policy on April 23—was pretextual.[172]   Plaintiff cannot show that other, similarly situated employees who did not file for FMLA leave were treated more favorably, that is less harshly, under the No Call, No Show policy.[173]   Because Plaintiff did not request FMLA

---

[169] **Richardson v. Monitronics Int'l**, 434 F.3d 327, 332 (5th Cir. 2005); **Hunt v. Rapides Healthcare Sys.**, 277 F.3d 757, 768 (5th Cir. 2001), "To make a *prima facie* showing of retaliation under the FMLA, Hunt must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took leave."

[170] Plaintiff relies on **Norton v. City of San Antonio**, for the proposition that he was still a covered employee at the time he was retaliatorily discharged for filing for FMLA leave.  **Norton v. City of San Antonio** 2007 WL 861041 (W.D. Tex. Mar. 19, 2007).  In **Norton**, eleven days elapsed between the decision to terminate the plaintiff and the actual termination.  Within the context of that broad time difference, I stated, "It is unreasonable to read the provision to mean that an employee's right to FMLA leave ends when her employer decides to terminate her."  **Norton**, 2007 WL 861041, at * 2.  **Norton** is inapposite because, in this case, Plaintiff filed for FMLA leave after he had been terminated.

[171] **See Donald v. Syba, Incorp.**, 667 F.3d 757, 763 (6th Cir. 2012), holding that temporal proximity alone is not sufficient to establish a causal connection in a FMLA retaliation claim.  In addition, the Fifth Circuit recently held that a causal inference cannot be established under the theory that an employer knew an employee was sick and "would likely continue to request FMLA leave."  **Amsel v. Tex. Water Dev. Bd.**, 2012 WL 913676 (5th Cir. March 19, 2012), at *6.

[172] **Bocalbos**, 162 F.3d at 383.

[173] **Hunt**, 277 F.3d at 768.

leave until after he was terminated, he cannot demonstrate that but for filing for FMLA leave, he would not have been terminated.[174]  For all these reasons, Plaintiff's cause of action for FMLA retaliation fails as a matter of law.  Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

## VI.  Conclusion and Recommendation

Based on the foregoing, I recommend GRANTING Defendant's motion for summary judgment (Docket Entries 18 and 33).  Plaintiff failed to establish that there are genuine, disputed issues of material fact as to any of the causes of action in his complaint.  I further recommend DENYING AS MOOT all other pending motions in this case.

## VII.  Instructions For Service And Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[175]  Such party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written

---

[174] **Seaman v. CSPH**, 179 F.3d 297, 301 (5th Cir. 1999).

[175] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[176]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[177]

      **SIGNED** on March 29, 2012.

                         NANCY STEIN NOWAK
                         UNITED STATES MAGISTRATE JUDGE

---

[176]**Thomas v. Arn**, 474 U.S. 140, 149-52 (1985); **Acuña v. Brown & Root**, 200 F.3d 335, 340 (5th Cir. 2000).

[177]**Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).